Zobel, J.
Plaintiffs, female members of Defendant Golf Club, filed complaints with the Massachusetts Commission Against Discrimination against Bear Hill Golf Club, Inc. and Bear Hill Associates, Inc. (collectively, “Bear Hill”), G.L.c. 272, §§92A, 98. When 90 days had elapsed without the MCAD’s taking action, Plaintiffs commenced this action, G.L.c. 151B, §9. Both sides have now moved for summary judgment.
Plaintiffs, members in good standing of Bear Hill (Wanders Aff. ¶2; Gould Aff. ¶2), have repeatedly sought, unsuccessfully, to play in weekend golf tournaments (Wanders Aff. ¶¶7-8; Gould Aff. OT7-8), Bear Hill denied Plaintiffs’ requests solely because of Plaintiffs’ gender (Bear Hill’s Response to Request to Admit (“Response”), Nos. 53, 54, 55); Bear Hill holds “Ladies” (MurgiaAff. Ex. A) golf tournaments on weekdays only (Connolly Aff. ¶3), a condition which Plaintiffs’ occupational commitments do not permit them to meet.
Every year, Bear Hill holds 12 men’s tournaments which necessitate closing the course, i.e., precluding any nonentrant’s playing, for eight full days and two half-days (MurgiaAff. ¶14). Bear Hill holds 15 “ladies” tournaments, which close the course for about 60 half-days (Murgia Aff. ¶14). On 36 days throughout the season, Bear Hill holds seven gender-neutral tournaments (MurgiaAff. ¶14).
*354 Eveiy year, Bear Hill rents parts of its facilities to nonmembers 20-25 days (Connolly Aff. ¶7, 9; Murgia Aff. ¶7), generating 5.4% of its total income (Murgia Aff. ¶8). It thus accommodates such nonmember entities as various charities, the local high school golf team, public golf tournaments, and the producers of a TV commercial (Connolly Aff. ¶11). This business is essential to Bear Hill’s financial health (Response Ex. F and Ex. G). Without the nonmember revenue, Bear Hill (a) would not “break even”; (b) would “realize a significant loss”; and (c) would have to increase membership dues (Response Ex. G).
On these facts, Plaintiffs argue that Bear Hill’s gender-based tournament structure denies them benefits to which their full-membership status entitles them and thus subjects them to unlawful discrimination, G.L.c. 272, §§92A, 98.
Defendants, noting correctly that the statute only applies to public accommodation, insist that Bear Hill is a private club, immune to the statutory prescriptions and proscriptions.
The first question for decision, therefore, is whether Bear Hill is “a place of public accommodation, resort or amusement . . . which is open to or solicits the patronage of the general public,” G.L.c. 272, §92A; see, United States Jaycees v. Massachusetts Commission Against Discrimination, 391 Mass. 594, 597 (1984); East Chop Tennis Club v. Massachusetts Commission Against Discrimination, 364 Mass. 444, 452n (1973).
The statutory listing is not exclusive, Concord Rod and Gun Club, Inc. v. Massachusetts Commission Against Discrimination, 402 Mass. 716, 720 (1988). Courts must read the statute broadly, id. Thus the catalog, which already includes a hunting club, id.; a parade, Irish-American Gay, Lesbian and Bi-Sexual Group of Boston v. Boston, 418 Mass. 238, 248 (1994), reversed on other grounds, 115 S.Ct. 2338, 2351 (1995); and a finance company, Local Finance Co. v. Massachusetts Commission Against Discrimination, 355 Mass. 10, 15 (1969), seems well able to accommodate a golf club.
Of course, includibility is not tantamount to inclusion. That the anti-discrimination statute can apply to membership clubs traditionally considered private does not mean that every club must operate within the statute. In determining an organization’s status the court must consider a congeries of variables:
1. Is it a nonprofit organization? Bear Hill is a not-for-profit Massachusetts corporation, exempt from paying taxes.
2. Is its membership policy selective? On the present record, Bear Hill does not seem to follow a discernible selection pattern. Indeed during the period 1991-94 it rejected no applicant at all, Response 33.
3. Does it restrict physical access? Although Bear Hill does not open its (figurative) gates to the public as a whole, it certainly does allow groups whose makeup it cannot control to use its premises: charitable organizations, the Stoneham High School golf team, the local Rotary Club, and the participants at nonmember convivial and gustatory functions.
4. Is it open to, or does it solicit or accept patronage of, the general public? G.L.c. 272, §92A. In addition to the tolerated use described in the preceding paragraph, Bear Hill in fact advertises the availability of its banquet service to the fee-paying public.
5. Does it obtain substantial revenue from nonmember use of its premises? Although the income from such use accounts for only 5.4% of Bear Hill’s revenue, the record is clear that without the amounts that nonmembers pay for using Bear Hill facilities, Bear Hill would operate at a deficit which the members would have to make up.
The sum of the foregoing is simply that Bear Hill comes within the definition of “place of public accommodation.”
This, however, does not end the inquiry. Plaintiffs must establish that Bear Hill’s conduct amounted to a “distinction, discrimination or restriction on account of . . . sex . . .” G.L.c. 272, §98. As to that, the record shows that Plaintiffs, as women, received treatment different from that accorded men. Their claim rests solely on Bear Hill’s refusal to allow women unrestricted participation in golfing events. This, in turn, leads to a gender-based discrimination with respect to golf course availability. Certainly, no one criticizes Bear Hill for “closing” the course to general play during a tournament. The problem, from Bear Hill’s standpoint, is that the gender-selective tournament schedule significantly deprives women of the opportunity to play on weekends, i.e., to play at a time when their work schedule permits them to do so. The present arrangement thus prevents some club members (working women) from using Bear Hill’s facilities as freely as others (working men) similarly situated. Because the distinction proceeds entirely from the gender-separate organization of the tournaments, it offends the statute. Even if the tournaments were “separate but equal,” Bear Hill would be cast in violation, because in the matter of weekend access, it discriminates against its members solely on gender grounds.
ORDER
Accordingly, it is Ordered, that Plaintiffs’ Motion for Summary Judgment on Count VI of the Complaint be, and the same hereby is, Allowed; and it is
Further Ordered, that Defendants’ Motion for Summary Judgment be, and the same hereby is, Denied, as to Count IV.